# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| RICHARD ENYART, | ) | CASE NO. 3:12CV2445 |
| | ) | |
| Petitioner, | ) | JUDGE JAMES G. CARR |
| | ) | |
| v. | ) | MAGISTRATE JUDGE GREG WHITE |
| | ) | |
| JOHN COLEMAN, Warden | ) | |
| | ) | |
| Respondent. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |

Petitioner, Richard Enyart ("Enyart"), challenges the constitutionality of his convictions in *State v. Enyart*, Franklin County Court of Common Pleas Case Nos. 07CR6170 and 07CR9135.[1]  Enyart, represented by counsel, filed his Petition for a Writ of Habeas Corpus (Doc. No. 1) pursuant to 28 U.S.C. § 2254 on September 28, 2012.  On March 20, 2013, Warden John Coleman ("Respondent") filed his Return of Writ.  (Doc. No. 7.)   Enyart filed a Traverse on June 3, 2013.  (Doc. No. 9.)  Respondent filed a Reply to the Traverse on June 14, 2013.  (Doc. No. 11.)  For reasons set forth in detail below, it is recommended that Enyart's Petition be DENIED.

---

[1]  While Franklin County is located within the United States District Court for the Southern District of Ohio, Enyart is currently confined in the Allen Correctional Institution ("ACI") in Lima, Ohio which is located within the Northern District of Ohio. Because Enyart challenges his convictions which occurred in a state court within the Southern District but he is in custody in the Northern District, both districts have concurrent jurisdiction over the instant Petition. *See* 28 U.S.C. § 2241(d); *Anderson v. Ohio Reformatory for Women*, 2012 WL 1854256 at * 3 (N.D. Ohio March 12, 2012).

## I.  Summary of Facts

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a state court, factual determinations made by state courts are presumed correct.  28 U.S.C. § 2254(e)(1); *see also Moore v. Mitchell*, 708 F.3d 760, 775 (6th Cir. 2013).  The state appellate court summarized the facts underlying Enyart's conviction as follows:

> {¶ 2} On August 24, 2007 the state indicted defendant on 13 counts of gross sexual imposition, six counts of illegal use of a minor in nudity oriented material or performance, eight counts of pandering sexually orientated material involving a minor, ten counts of rape, one count of attempted rape, and one count of tampering with evidence.  The state subsequently indicted defendant on December 21, 2007 for 12 counts of gross sexual imposition, four counts of illegal use of a minor in nudity orientated material or performance, 12 counts of rape, and six counts of pandering sexually orientated material involving a minor. The victims of the offenses were girls between the ages of five and 12 years old.

> {¶ 3} The facts supporting these charges came to light on August 11, 2007 when the four neighborhood sisters, ages seven to 13, went swimming at defendant's home.  After swimming, the two older girls, ages ten and 13, went into defendant's bathroom to change out of their swim suits and back into their street clothes.  Defendant told the girls to be sure to use the after-sun lotion in the bathroom, especially around the edges of the swimsuit.  The girls stated they had to change in front of the toilet because of the way a chair was placed in the bathroom.

> {¶ 4} After getting dressed, the oldest girl noticed a video camera, covered with towels, on the toilet seat.  She knew the camera was operating because she could see herself move in the opened LED screen attached to the recorder, and she brought her younger sister in to see the camera.  According to the girls, as soon as they left the bathroom, "defendant immediately went into the bathroom and closed the door."  (Tr. 12.)  The older girl then collected the rest of her sisters to return home, but the youngest refused.  The others immediately went home and advised their mother of what they saw in defendant's bathroom; their mother retrieved the youngest and brought her home.

> {¶ 5} The girls' family lived anywhere from eight to 12 houses down the street from defendant, so that defendant's house was within eyesight from their front yard.  The girls' mother called police and remained in her front yard the entire time as she awaited law enforcement's arrival, "observing the defendant's

-2-

residence" and reporting "that she never saw him leave the house."  (Tr. 14.)
She informed the arriving officers which house was defendant's residence and
gave them defendant's address.

{¶ 6} Before any member of the sexual assault squad arrived on the scene,
Officers Edly and Waldenga arrived.  (Tr. 93.)  They knocked loudly several
times on front and side doors in an attempt to speak with defendant, announced
they were Columbus police, but received no response.  One of the officers
stated he heard some movement inside the residence but was unsure from what
room the noise came.

{¶ 7} Detective David Phillips of the sexual assault squad arrived at the girls'
house and, after speaking to the girls, "determined that it was critical that we
recover this camera before there was any opportunities to destroying [sic] the
evidence." (Tr. 10-11.)  Sergeant Kaeppner, also from the sexual assault squad,
was present as well.  Phillips spoke to him of his concern that defendant was "in
the home with the evidence and the potential for the destruction of that
evidence," and Phillips requested the officers be allowed to "enter the house
under exigent circumstances to remove Mr. Enyart from the house."  (Tr. 14.)

{¶ 8} After being advised of the information known at that point, Kaeppner
concluded that "[i]f the camera was on, as the two girls-one girl described, we're
talking about electronic data which is easily erased. It's readily destructible."
(Tr. 125.)  Kaeppner decided to "secure anyone inside, bring them out, [and]
secure the scene until we could get a search warrant."  (Tr. 124-26.)  Although
Kaeppner admitted law enforcement never heard or saw any burning or
crunching consistent with destroying evidence, he stated, in response to a
question, that hitting a delete button on a camera "I think we all know * * *
makes no - no sound."  (Tr. 136.)

{¶ 9} Officers entered the house through an unlocked side door; they were in
the house three to five minutes and exited the house with only defendant.
Although the officers performed a sweep of defendant's residence to assure no
one else remained inside the house, the officers neither searched defendant's
home nor looked around for anything other than another person.  Phillips
re-entered the house at defendant's request to retrieve defendant's shoes but
stated he performed no type of search while inside the house.  Officers then
took the defendant to police headquarters to interview him while other officers
secured the scene until police obtained a search warrant.

{¶ 10} Detective Grube, a detective from the sexual assault squad who with
Phillips interviewed the girls, went back to her office and drafted the search
warrant for defendant's residence.  A Franklin County Municipal Court judge
signed the warrant that authorized officers to search defendant's residence for

-3-

implements and tools used as a means of the commission of a crime, including "all digital media storage devices, any type of equipment used to produce and view photographs or video images, including all computers, external and internal storage equipment or media and any type of storing mediums including, but not limited to hard disks, floppy disks, video disks or video tapes," or any other evidence of the crimes of voyeurism and pandering sexually oriented matter involving a minor. (State's Exhibit A.) The affidavit in support of the warrant included the information the girls gave the detectives.

{¶ 11} When the officers executed the search warrant that evening, they seized numerous digital video disks ("DVDs") and VHS cassette tapes, DVD players, and a book about calculation of drug dosages. The videos revealed defendant "performing sexual acts on children who seemed to be not conscious." (Tr. 146.) One of the first DVDs the officers watched depicted defendant engaging in sexual conduct with a five to six-year-old child. Based on the incriminating DVDs and tapes, police obtained another search warrant and re-arrested defendant.

{¶ 12} Defendant filed three motions to suppress in the trial court. The first sought to suppress any evidence derived from the initial warrantless entry into defendant's residence. Defendant argued that because no exigent circumstances justified the officers' entry into the home, they violated defendant's Fourth Amendment rights. The second motion sought to suppress defendant's statements made to police following his second arrest. Defendant asserted police elicited those statements in violation of defendant's Fifth Amendment rights under *Miranda v. Arizona* (1966), 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, and *Edwards v. Arizona* (1981), 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378. (R. 25.) The third motion sought to suppress the evidence taken from defendant's home; it alleged police had no probable cause to support the unconstitutionally overbroad search warrant. (R. 28.) The trial court denied all three motions.

{¶ 13} Pursuant to defendant's no contest pleas, the trial court found defendant guilty on all charges and imposed maximum, consecutive sentences. Defendant appealed, assigning a single error that asserted his no contest plea was involuntary because the trial court failed to comply with Crim.R. 11 and the due process clauses of the Ohio and United States Constitutions. *State v. Enyart*, 10th Dist. No. 08AP-184, 2008-Ohio-6418, ¶ 1. We concluded the trial court did not err in conducting the plea proceedings, as the record demonstrated the trial court engaged in "an extensive inquiry with the defendant regarding the crimes to which he was entering the plea and the maximum penalties." As a result, we affirmed the trial court's judgment.

> {¶ 14} On March 5, 2009 defendant filed an application to reopen his appeal pursuant to App.R. 26(B), arguing he was deprived of effective assistance of appellate counsel.  Although defendant alleged numerous potential errors in the trial court proceedings that his appellate counsel did not raise, we granted the application for reopening only as to one: appellate counsel's failure to assign as error the trial court's decision denying defendant's motion to suppress evidence from the warrantless entry to his home.

*State v. Enyart*, 2010 WL 4681889 at ** 1-3 (Ohio App. 10th Dist. Nov. 18, 2010).

## II.  Procedural History

**A.   Conviction**

On August 24, 2007, a Franklin County Grand Jury charged Enyart with thirteen counts of Gross Sexual Imposition ("GSI") in violation of Ohio Revised Code ("O.R.C.") § 2907.05; six counts of Illegal Use of Minor in Nudity Oriented Material or Performance ("Illegal Use of Minor") in violation of O.R.C. § 2907.323; eight counts of Pandering Sexually Oriented Matter Involving a Minor ("Pandering") in violation of O.R.C. § 2907.02; ten counts of Rape in violation of O.R.C. 2907.02; one count of Attempted Rape in violation of O.R.C. §§ 2923.02/2907.02; and, one count of Tampering with Evidence in violation of O.R.C. § 2921.12. (Doc. No. 7-1, Exh. 3.)

Thereafter, on December 21, 2007, a Franklin County Grand Jury charged Enyart with twelve counts of GSI in violation of O.R.C. § 2907.05; four counts of Illegal Use of a Minor in violation of O.R.C. § 2907.323; twelve counts of Rape in violation of O.R.C. § 2907.02; and six counts of Pandering in violation of O.R.C. § 2907.322.[2]  (Doc. No. 7-1, Exh. 4.)

---

[2]  The August 2007 indictment was filed in Case No. 07CR6170, and the December 2007 indictment was filed in Case No. 07CR9135.  (Doc. No. 7-1, Exhs. 3, 4.)  During a subsequent suppression hearing conducted on January 3, 2008, the State indicated that the December 2007 indictment supplemented (rather than replaced) the August 24, 2007 indictment.  (Doc. No. 7-2 at 5-6.)  The State also noted that it had filed a motion to join Case Numbers 07CR6170 and 07CR9135.  (Doc. No. 7-2 at 5-6.)  It is unclear whether the trial court ruled on the motion, but the two cases appear to have been considered

In November 2007, Enyart's counsel filed motions to suppress evidence derived from the initial warrantless entry into his residence; evidence taken from his residence pursuant to the search warrant; and, statements made to police following his second arrest.  (Doc. No. 7-1, Exhs. 5, 7, 9.) The trial court held a suppression hearing on January 3, 2008 (Doc. No. 7-2) and subsequently denied each of Enyart's motions  (Doc. No. 7-2 at 179-186.)

On February 4, 2008, in Case No. 07CR6170, Enyart pled no contest to Counts 25 through 39 of the Indictment; i.e. two counts of Rape; six counts of GSI; one count of Pandering; one count of Attempted Rape; four counts of Illegal Use of a Minor; and one count of Tampering with Evidence.  (Doc. No. 7-1, Exh. 11.)  The State requested a *nolle prosequi* on the remaining counts.  On the same date, in Case No. 07CR9135, Enyart pled no contest to all charges; i.e. twelve counts of Rape; twelve counts of GSI; six counts of Pandering; and, four counts of Illegal Use of Minor.  (Doc. No. 7-1, Exh. 12.)

The trial court conducted a plea hearing on February 4, 2008 as to both Case Nos. 07CR6170 and 07CR9135.  (Doc. No. 7-3.)  After engaging in a lengthy colloquy with Enyart, the trial court accepted his pleas, found him guilty, and sentenced him to maximum, consecutive prison terms.  (Doc. No. 7-3.)  Specifically, with respect to Case No. 07CR6170, the trial court sentenced Enyart to ten years to life on each Rape conviction; five years on each of the six GSI convictions; eight years on the Pandering conviction; ten years to life on the Attempted Rape conviction; eight years on each of the four Illegal Use of Minor convictions; and, five years on the Tampering with Evidence conviction.  (Doc. No. 7-1, Exh. 1.)  The court further ordered the sentences to be served consecutively to each other, and consecutive to the sentences in Case No.

jointly.

-6-

07CR9135.  (Doc. No. 7-1, Exh. 1.)  With respect to Case No. 07CR9135, the court sentenced Enyart to five years on each of the twelve GSI convictions; eight years on each of the four Illegal Use of Minor convictions; ten years to life on each of the twelve Rape convictions; and, eight years on each of the six Pandering convictions.  (Doc. No. 7-1, Exh. 2.)  In addition, the court ordered the sentences to be served consecutively to each other, and consecutive to the sentences in Case No. 07CR6170.  (Doc. No. 7-1, Exh. 2.)  Thus, the trial court imposed a total aggregate sentence of 365 years to life in prison.

**B.   Direct Appeal**

On March 6, 2008, Enyart, through counsel, filed a Notice of Appeal in Case No. 07CR9135 with the Court of Appeals for the Tenth Appellate District ("state appellate court"). (Doc. No. 7-1, Exh. 13.)  Several weeks later, Enyart filed a Notice of Appeal and Motion for Leave to File a Delayed Appeal in Case No. 07CR6170.  (Doc. No. 7-1, Exhs. 14, 15.)  The State did not oppose the motion for delayed appeal, and the state appellate court allowed the motion. (Doc. No. 7-1, Exh. 16.)  In these appeals, Enyart raised the same sole assignment of error:

> I.   APPELLANT'S PLEA OF NO CONTEST WAS INVOLUNTARY AS
>      THE COURT FAILED TO COMPLY WITH CRIMINAL RULE 11 AS
>      WELL AS THE DUE PROCESS CLAUSES OF THE OHIO AND
>      FEDERAL CONSTITUTIONS.  (THE RECORD REFERENCE: TR. OF
>      PLEA AND SENTENCING DATED FEBRUARY 4, 2008).

(Doc. No. 7-1, Exhs. 17, 18.)  The state appellate court ordered the appeals consolidated for the purpose of any further briefing and oral argument.  (Doc. No. 7-1, Exh. 19.)  On December 9, 2008, the court found Enyart knowingly, voluntarily and intelligently entered his plea and, therefore, affirmed his convictions and sentences.  *State v. Enyart*, 2008 WL 5160195 (Ohio App. 10th Dist. Dec. 9, 2008.)  *See also* Doc. No. 7-1, Exh. 21.  There was no further appeal from this

judgment.

## C.    Petition to Vacate or Set Aside Judgment of Conviction

On September 9, 2008, while his direct appeal was pending, Enyart filed a *pro se* Petition to Vacate or Set Aside Judgment of Conviction or Sentence.  (Doc. No. 7-1, Exh. 22.)  Therein, Enyart raised the following grounds for relief:

I.   UNLAWFUL ENTRY INTO A PRIVATE RESIDENCE, UNLAWFUL ARREST, AND UNLAWFUL SEARCH.

II.   UNLAWFUL INTERROGATION.

III.   PRESENTENCE INVESTIGATION REPORT WAS NOT PERFORMED PRIOR TO SENTENCING.

IV.   UNLAWFUL SENTENCE.

V.   INEFFECTIVE COUNSEL.

(Doc. No. 7-1, Exh. 22.)  On March 14, 2013, the trial court denied Enyart's petition on the basis of *res judicata*.  (Doc. No. 7-1, Exh. 24.)

## D.    Application to Reopen Appeal

On March 5, 2009, Enyart, through counsel, filed an Application to Reopen his Appeal pursuant to Ohio Appellate Rule 26(B).  (Doc. No. 7-1, Exh. 25.)  As summarized by the state appellate court, Enyart argued appellate counsel was ineffective for failing to raise the following issues on direct appeal: (1) trial counsel's failure to seek a change of venue; (2) trial counsel's failure to offer him as a witness at the suppression hearing; and, (3) the trial court's denial of his motions to suppress.  (Doc. No. 7-1, Exh. 28.)  The state appellate court granted Enyart's Application, but only with respect to "his contentions regarding the trial court's decision denying his motion to suppress."  (Doc. No. 7-1, Exh. 28 at 5.)

-8-

After his appeal was re-opened, Enyart filed a brief in which he raised the following

assignments of error:

     I.   THE COURT ERRED WHEN IT DENIED THE DEFENDANT'S
          MOTION TO SUPPRESS ALL PROPERTY SEIZED IN THE WAKE OF
          THE ILLEGAL ENTRY MADE INTO, THE SEARCH MADE OF, AND
          THE SEIZURES MADE FROM, THE HOME.

     II.   THE COURT ERRED WHEN IT FAILED TO CREDIT THE FACT THAT
          THE AFFIDAVIT FOR SEARCH WARRANT WAS BASED IN PART ON
          EVIDENCE THAT HAD BEEN IMPERMISSIBLY ACQUIRED IN THE
          WAKE OF THE ILLEGAL ENTRY AND THE ENSUING
          OBSERVATIONS MADE WHILE INSIDE THE HOME BY THE
          OFFICERS.

     III.   GIVEN THE ABSENCE OF ANY BASIS FOR THE REQUIRED
          DETERMINATION IT WOULD BE REASONABLE TO SEARCH
          THESE PREMISES FOR ANYTHING OTHER THAN A DESCRIBED
          CAMERA, THE COURT ERRED WHEN IT FAILED TO CREDIT THE
          AFFIDAVIT WITH HAVING FAILED TO SET FORTH A PROBABLE
          CAUSE BASIS FOR THE SEIZURE OF THE DVD'S AND THE
          CASSETTE TAPES.

     IV.   THE COURT ERRED WHEN IT FAILED TO SUPPRESS AND
          EXCLUDE AS EVIDENCE ALL STATEMENTS (CONFESSIONS,
          ADMISSIONS AND THE LIKE) WHICH WERE ACQUIRED IN
          VIOLATION OF PRINCIPLES THAT DISTILL FROM MAPP V. OHIO,
          367 U.S. 643, 81 S.CT. 1684, 6 L.ED.2D 1081 (1961); WONG SUN V.
          UNITED STATES, 371 U.S. 471, 83 S.CT. 407, 9 L.ED.2D 441 (1963);
          BROWN V. ILLINOIS, 422 U.S. 590, 95 S.CT. 2254, 45 L.ED.2D 416
          (1973); AND MIRANDA V. ARIZONA, 384 U.S. 436, 86 S.CT. 1602, 16
          L.ED.2D 694 (1966) AND ITS PROGENY.

     V.   UNDER THE FACTS HERE THE DEFENDANT, WHO WAS
          ARRESTED AFTER THE RAPE CHARGES HAD BEEN FILED, COULD
          NOT BE LAWFULLY DETAINED FOR QUESTIONING OF THE TYPE
          HE WAS REQUIRED TO SUBMIT TO.  WITH THIS BEING SO, THE
          COURT ERRED WHEN IT DENIED THE MOTION TO SUPPRESS THE
          APPELLANT'S ADMISSIONS AND CONFESSIONS.

     VI.   THE COURT ERRED IN RULING THE STATE ACTUALLY PROVED
          THE APPELLANT WAIVED RIGHTS GUARANTEED HIM BY
          MIRANDA (AND ITS PROGENY), AND WHEN HE VOICED THE

> VIEW IT WAS FOR THAT REASON THE MOTION TO SUPPRESS
> WAS DENIED.
>
> VII.  GIVEN THE CONFESSIONS PROVIDED BY THE APPELLANT WERE
> THE PRODUCT OF COERCION AND DURESS AND FOR THAT
> REASON WERE INVOLUNTARY, IT FOLLOWS THE COURT ERRED
> WHEN HE RULED THEY WERE PROVEN TO BE ADMISSIBLE.

*State v. Enyart*, 2010 WL 4681889 at * 3-4 (Ohio App. 10th Dist. Nov. 18, 2010).  *See*

*also* Doc. No. 7-1, Exh. 29.  On November 18, 2010, Enyart's convictions and sentences

were affirmed.[3]  *State v. Enyart*, 2010 WL 4681889 (Ohio App. 10th Dist. Nov. 18, 2010).

 *See also* Doc. No. 7-1, Exh. 32.

Enyart appealed the decision to the Supreme Court of Ohio, raising the following

assignments of error:

> I.    DUE PROCESS IS VIOLATED WHEN THE COURT DENIES A
> MOTION TO SUPPRESS ALL PROPERTY SEIZED IN THE WAKE OF
> THE ILLEGAL ENTRY INTO, AND THE SEARCH MADE OF, A
> HOME.
>
> II.   DUE PROCESS IS DENIED WHEN THE COURT FAILS TO CREDIT
> THE FACT THAT THE AFFIDAVIT FOR SEARCH WARRANT WAS
> BASED IN PART ON EVIDENCE THAT HAD BEEN IMPERMISSIBLY
> ACQUIRED IN THE WAKE OF THE ILLEGAL ENTRY AND THE
> ENSUING OBSERVATIONS.
>
> III.  ABSENT ANY BASIS FOR THE REQUIRED DETERMINATION IT
> WOULD BE REASONABLE TO SEARCH THESE PREMISES FOR
> ANYTHING OTHER THAN A DESCRIBED CAMERA, DUE PROCESS
> IS DENIED WHEN THE AFFIDAVIT FAILS TO SET FORTH A
> PROBABLE CAUSE BASIS FOR THE SEIZURE OF THE DVD'S AND

---

[3]   While it granted reopening with respect to Enyart's claims regarding appellate
counsel's failure to appeal the trial court's denial of his motions to suppress the evidence
taken from his home, the state appellate court expressly indicated that it had not granted
reopening with respect to appellate counsel's failure to appeal the trial court's denial of
Enyart's motion to suppress his statements to law enforcement.  *State v. Enyart*, 2010
WL 4681889 at *10.

-10-

THE CASSETTE TAPES.

IV. DUE PROCESS IS VIOLATED WHEN THE COURT FAILS TO SUPPRESS AND EXCLUDE AS EVIDENCE ALL STATEMENTS (CONFESSIONS, ADMISSIONS, AND THE LIKE) ACQUIRED IN VIOLATION OF AN ACCUSED'S CONSTITUTIONAL RIGHTS.

V. GIVEN THE DEFENDANT WAS ARRESTED AFTER THE RAPE CHARGES HAD BEEN FILED, AND HIS SIXTH AMENDMENT RIGHT TO COUNSEL HAD VESTED, HE COULD NOT BE LAWFULLY DETAINED FOR QUESTIONING OF THE TYPE HE WAS SUBJECTED TO.

VI. THE ONUS IS ON THE STATE TO ACTUALLY PROVE THE APPELLANT WAIVED BOTH HIS FIFTH AND SIXTH AMENDMENT RIGHT TO COUNSEL.

VII. WHERE THE CONFESSIONS PROVIDED BY THE APPELLANT WERE THE PRODUCT OF COERCION AND DURESS AND FOR THAT REASON WERE INVOLUNTARY; DUE PROCESS IS DENIED WHEN SUCH STATEMENTS ARE DEEMED TO HAVE BEEN ADMISSIBLE.

(Doc. No. 7-1, Exh. 34.)  On March 16, 2011, Enyart's appeal was dismissed as not involving any substantial constitutional question.  (Doc. No. 7-1, Exh. 36.)

Enyart, through counsel, subsequently filed a petition for writ of *certiorari* in the United States Supreme Court.  Enyart's petition was denied on October 3, 2011.  (Doc. No. 7-1, Exh. 37.)

**E.    Federal Habeas Petition**

Enyart filed the instant habeas petition in this Court on September 28, 2012, asserting the following grounds for relief:

I. DUE PROCESS IS VIOLATED WHEN THE COURT DENIES A MOTION TO SUPPRESS PROPERTY SEIZED AS EVIDENCE, IN THE WAKE OF THE ILLEGAL ENTRY INTO, AND THE SEARCH MADE OF, A PRIVATE HOME.

II. DUE PROCESS IS DENIED WHEN THE COURT FAILS TO CREDIT

-11-

THE FACT THAT THE AFFIDAVIT FOR THE SEARCH WARRANT
WAS BASED IN PART ON EVIDENCE THAT HAD BEEN
IMPERMISSIBLY ACQUIRED IN THE WAKE OF AN EARLIER
ILLEGAL ENTRY AND ENSUING OBSERVATIONS THAT WERE
INCORPORATED IN THE AFFIDAVIT.

III.   ABSENT ANY BASIS FOR THE REQUIRED DETERMINATION IT
WOULD BE REASONABLE TO SEARCH THESE PREMISES FOR
ANYTHING OTHER THAN A DESCRIBED CAMERA, DUE PROCESS
WAS DENIED WHEN THE AFFIDAVIT (FOR THE SEARCH
WARRANT) FAILED TO SET FORTH A PROBABLE CAUSE BASIS
FOR THE SEIZURE OF CERTAIN DVDS AND CASSETTE TAPES,
WHICH WERE SEIZED IN THE SEARCH.

IV.   DUE PROCESS WAS VIOLATED WHEN THE COURT FAILED TO
SUPPRESS AND EXCLUDE AS EVIDENCE ALL INCULPATORY
STATEMENTS (CONFESSIONS, ADMISSIONS, AND THE LIKE)
ACQUIRED IN VIOLATION OF AN ACCUSED'S CONSTITUTIONAL
AND STATUTORY RIGHTS.

V.   GIVEN PETITION WAS REARRESTED HERE, ON INDISPUTABLY
RELATED CHARGES, AFTER HAVING FORMALLY (AND INDEED
IN WRITING) ASSERTED HIS SIXTH AMENDMENT "RIGHT TO
COUNSEL" AT HIS ARRAIGNMENT, HE CANNOT BE HELD TO
HAVE WAIVED HIS "RIGHT TO COUNSEL" SIMPLY BECAUSE HE
WAS MIRANDIZED.

VI.   GIVEN THE ONUS IS ACTUALLY ON THE STATE TO PROVE AN
ACCUSED WAIVED BOTH HIS FIFTH AND SIXTH AMENDMENT
RIGHT TO COUNSEL, THE STATE'S FAILURE TO DO SO HERE WAS
A DUE PROCESS VIOLATION.

VII.  WHERE THE ASSERTED CONFESSIONS PROVIDED BY THE
PETITIONER WERE INDISPUTABLY THE PRODUCT OF COERCION
AND DURESS, AND FOR THAT REASON WERE INVOLUNTARY,
DUE PROCESS WAS DENIED WHEN SUCH STATEMENTS WERE
SUMMARILY AND ROTELY DEEMED TO HAVE BEEN ADMISSIBLE
AS PROOF OF GUILT.

VIII. THE CUMULATIVE EFFECT OF THE FACT THAT, WITH
REFERENCE TO EACH OF THE CONTENTIONS MADE ABOVE,
COUNSEL'S RESPONSES TO THE VARIOUS CONTENTIONS
REFERRED TO THEREIN SEEM CLEARLY TO SHOW HE FAILED TO
PROVIDE RICHARD ENYART WITH THE TYPE OF EFFECTIVE

ASSISTANCE OF COUNSEL THAT CAN SURVIVE
CONSTITUTIONAL SCRUTINY WITHIN THE AMBIT OF
STRICKLAND V. WASHINGTON, 466 U.S. 668 (1984).  INDEED, SO
MUCH SO, THAT COUNSEL LITERALLY WAS NOT FUNCTIONING
AS THE COUNSEL GUARANTEED BY THE SIXTH AMENDMENT OF
THE UNITED STATES CONSTITUTION.  IN THE WAKE THEREOF
RICHARD ENYART WAS PREJUDICED– IN FACT, SEVERELY SO.

(Doc. No. 1 at 11-12.)

### III.  Exhaustion and Procedural Default

#### A.       Exhaustion Standard

Petitioners must exhaust their state remedies prior to raising claims in federal habeas

corpus proceedings.  *See* 28 U.S.C. § 2254(b),( c).  This requirement is satisfied "when the

highest court in the state in which the petitioner was convicted has been given a full and fair

opportunity to rule on the petitioner's claims."  *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir.

1990).  However, if relief is no longer available in state court, exhaustion can be rendered moot:

"If no remedy exists, and the substance of a claim has not been presented to the state courts, no

exhaustion problem exists; rather, it is a problem of determining whether cause and prejudice

exist to excuse the failure to present the claim in the state courts."  *Rust v. Zent*, 17 F.3d 155, 160

(6th Cir. 1994); *see Buell v. Mitchell*, 274 F.3d 337, 349 (6th Cir. 2001).

#### B.       Procedural Default Standard

Federal courts will not consider the merits of procedurally defaulted claims, unless the

petitioner demonstrates cause for the default and prejudice resulting therefrom, or where failure to

review the claim would result in a fundamental miscarriage of justice.  *See Lundgren v. Mitchell*,

440 F.3d 754, 763 (6th Cir.2006) (*citing Wainwright v. Sykes*, 433 U.S. 72, 87 (1977)).  A claim

may become procedurally defaulted in two ways.  *Id.*  First, a petitioner may procedurally default

a claim by failing to comply with state procedural rules in presenting his claim to the appropriate state court. *Id.*; *see also Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). If, due to petitioner's failure to comply with the procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent and adequate grounds for precluding relief, the claim is procedurally defaulted.[4] *Id.*

Second, a petitioner may also procedurally default a claim by failing to raise and pursue that claim through the state's "ordinary appellate review procedures." *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999).  If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, it is procedurally defaulted. *Engle v. Isaac*, 456 U.S. 107, 125 n. 28 (1982); *see also Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991).  This second type of procedural default is often confused with exhaustion. Exhaustion and procedural default, however, are distinct concepts.  AEDPA's exhaustion requirement only "refers to remedies still available at the time of the federal petition." *Engle*, 456 U.S. at 125 n. 28.  Where state court remedies are no longer available to a petitioner because he failed to use them within the required time period, procedural default and not exhaustion bars federal court review.  *Id*.  In Ohio, a petitioner is not entitled to raise claims in post-conviction proceedings where those claims could have been raised on direct appeal.  *Id*. Thus, if an Ohio petitioner failed to raise a claim on direct appeal, which could have been raised, the claim is procedurally defaulted.  *Id*.

---

[4]  In *Maupin*, the Sixth Circuit established a four-step analysis to determine whether a claim is procedurally defaulted.  785 F.2d at 135.  Under this test, the Court decides (1) whether the petitioner failed to comply with an applicable state procedural rule, (2) whether the state courts actually enforced the state procedural sanction, (3) whether the state procedural bar is an "independent and adequate" state ground on which the state can foreclose federal review, and (4) whether the petitioner has demonstrated "cause" and "prejudice."  *Id*. at 138-39; *Barkley v. Konteh*, 240 F.Supp.2d 708 (N.D. Ohio 2002).

-14-

A claim is adequately raised on direct appeal if it was "fairly presented" to the state court. To fairly present a claim to a state court a petitioner must assert both the legal and factual basis for his claim. *See McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000). Accordingly, a "petitioner must present his claim to the state courts as a federal constitutional issue--not merely as an issue arising under state law." *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984). A petitioner can take four actions in his brief which are significant to the determination as to whether a claim has been fairly presented as a federal constitutional claim: "(1) reliance upon federal cases employing constitutional analysis; (2) reliance upon state cases employing federal constitutional analysis; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law." *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003).

A petitioner's procedural default, however, may be excused upon a showing of "cause" for the procedural default and "actual prejudice" from the alleged error. *See Maupin*, 785 F.2d at 138-39. "Demonstrating cause requires showing that an 'objective factor external to the defense impeded counsel's efforts to comply' with the state procedural rule." *Franklin v. Anderson*, 434 F.3d 412, 417 (6th Cir. 2006) (*quoting Murray v. Carrier*, 477 U.S. 478, 488 (1986)). Meanwhile, "[d]emonstrating prejudice requires showing that the trial was infected with constitutional error." *Id*. Where there is strong evidence of a petitioner's guilt and the evidence supporting petitioner's claim is weak, the actual prejudice requirement is not satisfied. *See United States v. Frady*, 456 U.S. 152, 172 (1982); *Perkins v. LeCureux*, 58 F.3d 214, 219-20 (6th Cir. 1995); *Rust*, 17 F.3d at 161-62. Prejudice does not occur unless petitioner demonstrates "a reasonable probability" that

-15-

the outcome of the trial would have been different. *See Mason v. Mitchell*, 320 F.3d 604, 629 (6th

Cir. 2003) (*citing Strickler v. Greene*, 527 U.S. 263, 289 (1999)).

Finally, a petitioner's procedural default may also be excused where a petitioner is

actually innocent in order to prevent a "manifest injustice." *See Coleman v. Thompson*, 501 U.S.

722, 749-50 (1991). Conclusory statements are not enough – a petitioner must "support his

allegations of constitutional error with new reliable evidence-whether it be exculpatory scientific

evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at

trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995)*; See Jones v. Bradshaw*, 489 F.Supp.2d 786,

807 (N.D.Ohio 2007).

## IV.  Review on the Merits

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996

("AEDPA"), 28 U.S.C. § 2254. *See Lindh v. Murphy*, 521 U.S. 320, 326-27, 337 (1997). The

relevant provisions of AEDPA state:

> An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted with respect to any
> claim that was adjudicated on the merits in State court proceedings unless the
> adjudication of the claim–
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable
> > application of, clearly established Federal law, as determined by the Supreme
> > Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of
> > the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (1996). Clearly established federal law is to be determined by the

holdings of the United States Supreme Court. *See Parker v. Matthews,* 132 S. Ct. 2148, 2012 WL

2076341, *6 (U.S. Jun. 11, 2012); *Renico v Lett,* 559 U.S. –, 130 S.Ct. 1855, 1865-1866 (2010);

-16-

*Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Ruimveld v. Birkett*, 404 F.3d 1006, 1010 (6th Cir. 2005).  However, an explicit statement by the Supreme Court is not mandatory; rather, "the legal principles and standards flowing from [Supreme Court] precedent" also qualify as "clearly established law."  *Ruimveld*, 404 F.3d at 1010 (*quoting Taylor v. Withrow*, 288 F.3d 846, 852 (6th Cir. 2002))  The Supreme Court has indicated, however, that circuit precedent does not constitute "clearly established Federal law, as determined by the Supreme Court."  *Parker*, 2012 WL 2076341, *6; *Howes v. Walker,* 132 S.Ct. 2741, 2012 WL 508160 (2012).

A state court's decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts."  *Williams v. Taylor*, 529 U.S. at 413.  By contrast, a state court's decision involves an unreasonable application of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  *Id.*  However, a federal district court may not find a state court's decision unreasonable "simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly."  *Id.* at 411.  Rather, a federal district court must determine whether the state court's decision constituted an objectively unreasonable application of federal law.  *Id.* at 410-12.  "This standard generally requires that federal courts defer to state-court decisions."  *Strickland v. Pitcher*, 162 Fed. Appx. 511, 516 (6th Cir. 2006) (*citing Herbert v. Billy*, 160 F.3d 1131, 1135 (6th Cir. 1998)).

In *Harrington v. Richter*, —— U.S. ——, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011), the

-17-

Supreme Court held that as long as "fairminded jurists could disagree on the correctness of the state court's decision," relief is precluded under the AEDPA. *Id.* at 786 (internal quotation marks omitted). The Court admonished that a reviewing court may not "treat[ ] the reasonableness question as a test of its confidence in the result it would reach under *de novo* review," and that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 785. The Court noted that Section 2254(d) "reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems" and does not function as a "substitute for ordinary error correction through appeal." *Id.* (internal quotation marks omitted). Therefore, a petitioner "must show that the state court's ruling ... was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786–87. This is a very high standard, which the Supreme Court readily acknowledged. *See id.* at 786 ("If this standard is difficult to meet, that is because it is meant to be.")

### A.  Effect of No Contest Plea

Respondent argues Enyart's no contest plea constitutes a waiver of all federal habeas claims except whether his plea was knowing and voluntary. Because the Petition does not raise any claim pertaining to the knowing or voluntary character of his plea, Respondent maintains Enyart's entire habeas Petition should be dismissed. Respondent further asserts that, even if Enyart had raised a habeas claim challenging his no contest plea, any such claim would be procedurally defaulted because Enyart failed to appeal this issue to the Supreme Court of Ohio after it was rejected by the state appellate court. (Doc. No. 7 at 24.)

Enyart does not address this issue in either his Petition or Traverse.

-18-

As the Sixth Circuit recently reiterated, "a voluntary and unconditional guilty plea [generally] 'bars any subsequent non-jurisdictional attack on the conviction.' " *Werth v. Bell*, 692 F.3d 486, 495 (6th Cir. 2012) (quoting *United States v. Corp*, 668 F.3d 379, 384 (6th Cir.2012)). The Supreme Court has explained this is so because:

> a guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.

*Tollett v. Henderson*, 411 U.S. 258, 267, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973). The Supreme Court has reiterated this principle on several occasions. *See, e.g., United States v. Broce*, 488 U.S. 563, 569, 109 S.Ct. 757, 102 L.Ed.2d 927 (1989) ("[W]hen the judgment of conviction upon a guilty plea has become final and the offender seeks to reopen the proceeding, the inquiry is ordinarily confined to whether the underlying plea was both counseled and voluntary."); *Mabry v. Johnson*, 467 U.S. 504, 508, 104 S.Ct. 2543, 81 L.Ed.2d 437 (1984) *overruled in part on other grounds by Puckett v. U.S.*, 556 U.S. 129, 138 fn 1, 129 S.Ct. 1423, 173 L.Ed.2d 266 (2009) (citing *Tollett* and other cases) ("It is well settled that a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked."). Thus, "after the entry of an unconditional guilty plea, the defendant may challenge only the court's jurisdiction and the voluntary and intelligent character of the plea itself." *Werth*, 692 F.3d at 495. *See also United States v. Ferguson*, 669 F.3d 756, 763 (6th Cir. 2012).

Here, Enyart pled no contest to (1) Counts 25 through 39 of the Indictment in Case No.

-19-

07CR6170;[5] and, (2) all 34 counts of the Indictment in Case No. 07CR9135.  (Doc. No. 7-1, Exhs. 11, 12.)  As Respondent correctly notes, the instant habeas Petition does not claim a jurisdictional defect nor does it raise any challenge to the voluntary or intelligent character of Enyart's no contest plea.  Moreover, while Enyart argues generally that his trial counsel was ineffective for various reasons, he does not clearly argue that his plea was not knowing, voluntary or intelligent because of the alleged ineffectiveness of trial counsel.  *See Hill v. Lockhart*, 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985) (finding that when "a defendant is represented by counsel during the plea process and enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases").

Respondent argues the Petition should be dismissed in its entirety on this basis alone.  The Court notes, however, that the case law cited by Respondent (and set forth above) discusses waiver in the context of a "voluntary and *unconditional*" plea.  *Werth*, 692 F.3d at 495 (emphasis added).  Here, the Petition refers to Enyart's no contest plea as being "conditional."  *See e.g.* Doc. No. 1 at 2 (stating that "it is beyond dispute that Richard Enyart entered a conditional plea to these charges, subject to an appeal").  While Enyart does not elaborate on this assertion, the Court's review of the state court record indicates that, during the plea and sentencing hearing, Enyart's defense counsel specifically stated Enyart "intend[ed] to appeal this court's rulings on the motions [to suppress]."  (Doc. No. 7-3 at 53.)  The Court further notes that, under Ohio law, the entry of a no contest plea does not waive a criminal defendant's right to appeal a trial court's

---

[5] As noted *supra*, the State requested, and the trial court entered, a *nolle prosequi* on Counts 1 through 24 of the Indictment in Case No. 07CR6170.  (Doc. No. 7-1, Exh. 11.)

ruling on a pretrial motion to suppress. *See* Ohio Crim. R. 12(I) (providing that "[t]he plea of no

contest does not preclude a defendant from asserting upon appeal that the trial court prejudicially

erred in ruling on a pretrial motion, including a pretrial motion to suppress evidence"); *State v.*

*Luna*, 2 Ohio St.3d 57 (1982).

In *Lefkowitz v. Newsome*, 420 U.S. 283, 95 S.Ct. 886, 43 L.Ed.2d 196 (1975), the

Supreme Court carved out an exception to *Tollett*'s general rule that a guilty plea, intelligently

and voluntarily made, bars the later assertion of constitutional challenges to pretrial proceedings.

In that case, the defendant pled guilty in state court to the charge of attempted possession of

dangerous drugs after the trial court denied his motion to suppress evidence seized at the time of

his arrest. *Id.* at 284. At the sentencing hearing, defendant indicated his intention to appeal both

his conviction and the denial of his motion to suppress. *Id.* at 285. Appeal of the trial court's

denial of his suppression motion was authorized by New York Code Crim. Proc. § 813-c, which

provided that an order denying a motion to suppress evidence obtained as a result of unlawful

search and seizure "may be reviewed on appeal from a judgment of conviction notwithstanding

the fact that such judgment of conviction is predicated upon a plea of guilty." *Id.*

After his state court appeals were unsuccessful, defendant filed a petition for writ of

habeas court in federal court. The district court granted the petition, and the Second Circuit

affirmed. On appeal, the Supreme Court granted *certiorari* on the limited issue of "a defendant's

right to file a federal habeas corpus petition challenging the lawfulness of a search or the

voluntariness of a confession or presenting other constitutional claims when a State provides for

appellate review of those issues after a guilty plea." *Id.* at 287.

In finding defendant had not waived his right to federal habeas review regarding the denial

of his motions to suppress, the Supreme Court explained that an exception to *Tollett*'s general

rule of waiver "might be proper when a State decides to permit a defendant to appeal from an

adverse ruling in a pretrial hearing despite the fact that his conviction is based on a guilty plea."

*Id.* at 288.  The Court noted the justification for such an exception "lies in the special nature of

the guilty plea" under New York law:

> In most States a defendant must plead not guilty and go to trial to preserve the
> opportunity for state appellate review of his constitutional challenges to arrest,
> admissibility of various pieces of evidence, or the voluntariness of a confession.
> A defendant who chooses to plead guilty rather than go to trial in effect
> deliberately refuses to present his federal claims to the state court in the first
> instance.  *McMann v. Richardson, supra*, at 768, 90 S.Ct., at 1447.  Once the
> defendant chooses to bypass the orderly procedure for litigating his
> constitutional claims in order to take the benefits, if any, of a plea of guilty, the
> State acquires a legitimate expectation of finality in the conviction thereby
> obtained.  *Cf. Fay v. Noia*, 372 U.S. 391, 438, 83 S.Ct. 822, 848, 9 L.Ed.2d 837.
> It is in this sense, therefore, that ordinarily 'a guilty plea represents a break in the
> chain of events which has preceded it in the criminal process.'  *Tollett v.
> Henderson, supra*, 411 U.S., at 267, 93 S.Ct., at 1608.
>
> New York, however, has chosen not to treat a guilty plea as such a 'break in the
> chain of events' with regard to certain types of constitutional claims raised in
> pretrial proceedings.  For a New York defendant whose basic defense consists of
> one of those constitutional claims and who has already lost a pretrial motion to
> suppress based on that claim, there is no practical difference in terms of appellate
> review between going to trial and pleading guilty.  In neither event does the State
> assert any claim of finality because of the judgment of conviction.  In either
> event under New York procedure the defendant has available the full range of
> state appellate review of his constitutional claims.  As to those claims, therefore,
> there is no 'break' at all in the usual state procedure for adjudicating
> constitutional issues.  The guilty plea operates simply as a procedure by which
> the constitutional issues can be litigated without the necessity of going through
> the time and effort of conducting a trial, the result of which is foreordained if the
> constitutional claim is invalid.  The plea is entered with the clear understanding
> and expectation by the State, the defendant, and the courts that it will not
> foreclose judicial review of the merits of the alleged constitutional violations.
> [footnote omitted]
>
> * * *
> Because of the entirely different expectations surrounding Newsome's plea and

the completely different legal consequences flowing from it, earlier guilty-plea cases holding that '(t)he focus of federal habeas inquiry is the nature of the advice (of counsel) and the voluntariness of the plea, not the existence as such of an antecedent constitutional infirmity,' *Tollett v. Henderson, supra*, at 266, 93 S.Ct., at 1608, are simply inapposite.  Newsome has satisfied all the prerequisites for invoking the habeas corpus jurisdiction of the federal courts. [footnote omitted]  He is no less entitled to federal review of his constitutional claim than is any other defendant who raises his claim in a timely fashion, in accordance with state procedure, and who pursues his claim through all available levels of state appellate review.

*Id.* at 289-292.  Thus, the Supreme Court held that "when state law permits a defendant to plead guilty without forfeiting his right to judicial review of specified constitutional issues, the defendant is not foreclosed from pursuing those constitutional claims in a federal habeas corpus proceeding."  *Id.* at 293.

Here, Ohio law provides that a defendant who pleads no contest to a criminal charge may nonetheless challenge on appeal a trial court's ruling on a pretrial motion to suppress.  This law is embodied not only in Ohio's Criminal Rule of Procedure 12(I), but also in the Supreme Court of Ohio's recognition and enforcement of this Rule in *State v. Luna*, 2 Ohio St.3d 57 (1982) (holding that, pursuant to Ohio Crim. R. 12(I), a plea of no contest pursuant to a negotiated plea agreement does not waive a defendant's right to appeal a trial court's ruling on a pretrial motion).  Moreover, like the defendant in *Lefkowitz*, Enyart specifically indicated at the plea and sentencing hearing that he intended to appeal the trial court's denial of his motions to suppress. The State did not object.  Finally, although Enyart's counsel chose not to raise his suppression issues on direct appeal, there is nothing in the state court suggesting that he was precluded from doing so.  Indeed, the state appellate court reopened the appeal for the express purpose of considering whether appellate counsel was ineffective for failing to raise on direct appeal the trial court's denial of his motions to suppress.  *See State v. Enyart*, 2010 WL 4681889 (Ohio

-23-

App. 10th Dist. Nov. 18, 2010).

Under similar circumstances, federal courts within this Circuit have considered  the merits of habeas claims unrelated to the voluntary or intelligent character of a guilty or no contest plea.  *See e.g. Hillman v. Beightler*, 2010 WL 2232640 (N.D. Ohio April 19, 2010) (considering petitioners' Fourth Amendments habeas claims relating to denial of pretrial motions to suppress despite the fact petitioners pled no contest); *McCune v. Ludwick*, 2011 WL 52605 at * 3 (E.D. Mich Jan. 7, 2011) (citing *Lefkowitz,* finding that "[b]ecause the petitioner specifically reserved his appeal of the identification and Fourth Amendment claims, the Court finds that he has not waived review of those claims by this Court" despite the fact that he entered a no contest plea).

Although this issue has not been addressed by the parties, the Court will, in light of the above, assume the *Lefkowitz* exception applies to Enyart's habeas claims relating to the trial court's denial of his motions to suppress.  To the extent the Petition could be construed to raise any grounds for relief unrelated to the denial of his motions to suppress, however, the Court finds Enyart has waived habeas review of such grounds by virtue of his no contest plea.

### B.  Fourth Amendment Issues

In his First, Second and Third Grounds For Relief, Enyart argues his due process rights were violated when the trial court denied his motions to suppress the evidence seized from his residence.  Specifically, Enyart maintains the state courts erred in finding that (1) exigent circumstances justified the initial warrantless entry into his home; and, (2) the search warrant was supported by probable cause and not overly broad.  Enyart also asserts the trial court failed to articulate essential findings on the record regarding the presence of exigent circumstances;

-24-

probable cause for his warrantless arrest; or, probable cause for the subsequent search warrant.

Respondent argues Enyart was afforded an opportunity to fully and fairly litigate his Fourth Amendment claims and, therefore, habeas review is foreclosed under *Stone v. Powell*, 428 U.S. 465, 494, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976).

Generally, a writ of habeas corpus cannot be granted on the ground that a petitioner's Fourth Amendment rights were violated if the petitioner had an opportunity to present the claim in state court. *See Stone*, 428 U.S. at 494 (1976); *Wallace v. Kato*, 549 U.S. 384, 395 n. 5, 127 S.Ct. 1091, 166 L.Ed.2d 973 (2007); *accord Ewing v. Ludwick*, 134 Fed. Appx. 907, 911 (6th Cir. 2005). The United States Supreme Court has held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Stone*, 428 U.S. at 494. The Sixth Circuit has found that the determination as to whether a petitioner has had "an opportunity for full and fair litigation of a Fourth Amendment claim" requires a federal district court to make two separate inquiries. *Riley v. Gray*, 674 F.2d 522, 526 (6th Cir. 1982) (citations omitted). First, the district court should ascertain "whether the state procedural mechanism, in the abstract, presents the opportunity to raise a fourth amendment claim." *Id*. Second, the district court must ascertain "whether presentation of the claim was in fact frustrated because of a failure of that mechanism." *Id.*

Clarifying this inquiry, the Sixth Circuit recently held that "the *Powell* 'opportunity for full and fair consideration' means an available avenue for the prisoner to present his claim to the state courts, not an inquiry into the adequacy of the procedure actually used to resolve that

-25-

particular claim." *Good v. Berghuis*, 729 F.3d 636, 639 (6th Cir. 2013). Thus, "[i]n the absence of a sham proceeding, there is no need to ask whether the state court conducted an evidentiary hearing or to inquire otherwise into the rigor of the state judiciary's procedures for resolving the claim." *Id.* Rather, "[w]e must presume that, once a federal claim comes before a state court, the state judge will use a fair procedure to achieve a just resolution of the claim." *Id.* In sum, the Sixth Circuit explained that, in considering whether a habeas petitioner had a full and fair opportunity to litigate his Fourth Amendment claim, "[o]ur approach, and the majority rule, asks a more basic and readily administrable question: Did the state courts permit the defendant to raise the claim or not?" *Id.* at 640. *See also Harrington v. Warden, London Correctional Inst.*, 2013 WL 5944193 at * 4 (S.D. Ohio Nov. 5, 2013).

Here, the record clearly shows Enyart had a full and fair opportunity to present his Fourth Amendment claims in state court. Enyart was represented by counsel throughout the trial court proceedings. His defense counsel filed two motions to suppress relating to the evidence taken from his residence. (Doc. No. 7-1, Exhs. 5, 9). The first motion argued that all evidence seized from his residence should be suppressed because the initial warrantless entry to his home on August 11, 2007 was not justified by exigent circumstances. (Doc. No. 7-1, Exh. 5.) The second argued the search warrant executed on the evening of August 11, 2007 was not supported by probable cause and was "grossly overbroad." (Doc. No. 7-1, Exh. 9.) The trial court held a suppression hearing, where Enyart's counsel cross-examined the state's witness, presented evidence, and argued the merits of his motions. (Doc. No. 7-2.) The record reflects the trial judge extensively questioned defense counsel regarding the legal and factual basis for his motions and thereafter explained on the record the basis for the decision to deny them. (Doc.

-26-

No. 7-2 at 165-186.)

Moreover, although Enyart entered a no contest plea, his counsel specifically indicated during the Plea and Sentencing Hearing that Enyart intended to appeal the trial court's denial of his motions to suppress. (Doc. No. 7-3 at 53.)   Indeed, as noted *supra*, Ohio Crim. R. Pr. 12(I) expressly provides that "[t]he plea of no contest does not preclude a defendant from asserting upon appeal that the trial court prejudicially erred in ruling on a pretrial motion, including a pretrial motion to suppress evidence."  While Enyart's counsel chose not raise the trial court's denial of his suppression motions on direct appeal, the state appellate court subsequently allowed Enyart to reopen his appeal pursuant to App. R. 26(B) to address the question of whether appellate counsel was ineffective for failing to do so.  (Doc. No. 7-1, Exh. 28.)  The state appellate court conducted a lengthy and thorough analysis, and concluded Enyart's original appellate counsel was not ineffective:

### II. Assignments of Error

    * * *

{¶ 16} Defendant's assignments of error involve three main arguments. Initially, defendant argues the first warrantless entry into his home violated his Fourth Amendment rights because no exigent circumstances justified the entry. Defendant next asserts no probable cause supported the search warrant, the search warrant was impermissibly overbroad, and it was based on observations the officers made during their initial warrantless entry.  Finally, defendant contends his statements to police during his first interrogation were involuntary and his statements to police during his second interrogation were inadmissible as a violation of defendant's Miranda rights.

### III. Exigent Circumstances

{¶ 17} Defendant contends his appellate counsel was ineffective in failing to assert as error the trial court's decision denying defendant's motion to suppress evidence arising from law enforcement's initial warrantless entry into his home.

{¶ 18} The Fourth Amendment to the United States Constitution assures the "right of the people to be secure in their * * * houses * * * against unreasonable searches and seizures."  Indeed, the Fourth Amendment "has drawn a firm line at the entrance to the house," and generally "that threshold may not be crossed without a warrant." *Payton v. New York* (1980), 445 U.S. 573, 590, 100 S.Ct. 1371, 1382, 63 L.Ed.2d 639.  An exception to the warrant requirement "permits warrantless felony arrests in the home if both probable cause to arrest and exigent circumstances are present." *State v. Jenkins* (1995), 104 Ohio App.3d 265, 268, 661 N.E.2d 806, citing *Payton*, 445 U.S. at 583-90, 100 S.Ct. at 1378-82.  In reviewing a trial court's decision on a motion to suppress, we examine the trial court's findings of fact for clear error, but "must independently determine as a matter of law * * * whether, from the standpoint of an objectively reasonable police officer, the facts gave rise to probable cause and exigent circumstances." *State v. Sheppard* (2001), 144 Ohio App.3d 135, 140, 759 N.E.2d 823, citing *Ornelas v. United States* (1996), 517 U.S. 690, 696, 699, 116 S.Ct. 1657, 1661-62, 1663, 134 L.Ed.2d 911.

{¶ 19} Probable cause is a "fluid concept" and must be determined under the totality of the circumstances. *Maryland v. Pringle* (2003), 540 U.S. 366, 370-71, 124 S.Ct. 795, 800, 157 L.Ed.2d 769, quoting *Illinois v. Gates* (1983), 462 U.S. 213, 232, 103 S.Ct. 2317, 2329, 76 L.Ed.2d 527.  "Probable cause exists where 'the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has been or is being committed." *Brinegar  v. United States* (1949), 338 U.S. 160, 175-76, 69 S.Ct. 1302, 1310-11, 93 L.Ed. 1879, *quoting Carroll v. United States* (1925), 267 U.S. 132, 162, 45 S.Ct. 280, 288, 69 L.Ed. 543.  Here, probable cause for the initial entry is not at issue because defendant's appellate counsel properly noted at oral argument on the reopened appeal that the officers had probable cause to enter defendant's residence.  Accordingly, defendant's argument turns on whether exigent circumstances existed.

{¶ 20} "An exigent circumstance is one that prompts police officers to believe either that a person in the home is in need of immediate aid to prevent a threat to life or limb, or that immediate entry is necessary to stop the imminent loss, removal, or destruction of evidence or contraband." *State v. Karle* (2001), 144 Ohio App.3d 125, 131, 759 N.E.2d 815.  The burden is on the "government to demonstrate exigent circumstances that overcome the presumption of unreasonableness that attaches to all warrantless home entries." *Welsh v. Wisconsin* (1984), 466 U.S. 740, 750, 104 S.Ct. 2091, 2098, 80 L.Ed.2d 732.  An important factor "to be considered when determining whether any exigency exists is the gravity of the underlying offense for which the arrest is being made." *Id.*, 466 U.S. at 753, 104 S.Ct. at 2099.

-28-

{¶ 21} Whether exigent circumstances are present is determined through an objective test that looks at the totality of the circumstances confronting the police officers at the time of entry.  *United States v. MacDonald* (C.A.2, 1990), 916 F.2d 766, 769. "[A] warrantless entry to prevent the destruction of evidence is justified if the government demonstrates: '(1) a reasonable belief that third parties are inside the dwelling; and (2) a reasonable belief that these third parties may soon become aware the police are on their trail, so that the destruction of evidence would be in order.' "  *United States v. Lewis* (C.A.6, 2000), 231 F.3d 238, 241, *quoting United States v. Sangineto-Miranda* (C.A.6, 1988), 859 F.2d 1501, 1512.  *See also State v. Russell* (June 30, 1998), 4th Dist. No. 97 CA 37, *quoting United States v. Bates* (C.A.6, 1996), 84 F.3d 790, 796 (noting officers must have a "reasonable belief that the loss or destruction of evidence [was] imminent," as the "mere possibility or suspicion that a party is likely to dispose of evidence * * * is not sufficient to create an exigency").

{¶ 22} Applying that standard, *Lewis, supra*, addressed officers who did not see anyone or hear anything inside the house.  The court concluded that without a reasonable belief third parties were in the house, "the belief that any evidence presumed to be inside the house was in danger of imminent destruction [was] unfounded."  *Id.* Similarly, in *State v. Wangul*, 8th Dist. No. 79393, 2002-Ohio-589, the state presented no evidence "the detectives were afraid that the appellant was going to start destroying" evidence.  Although a neighbor alerted police to the defendant's growing marijuana in his backyard, not only was the defendant unaware of the officers' presence, but officers were present in sufficient numbers to secure the scene until a warrant could be obtained.

{¶ 23} Defendant's circumstances differ markedly.  The officers here knew defendant was in his residence because the mother of the neighborhood girls who saw the camera recording them in the bathroom stated she observed defendant's residence after she called police and never saw defendant leave.  What is more, the car he typically drove remained in the driveway.  Her remarks confirmed in the sound of rustling or movement inside the house that one of the officers heard.

{¶ 24} Moreover, the officers reasonably could believe defendant soon would become aware of their presence and would destroy the evidence.  The girls told Phillips that, after they found the video camera, defendant immediately went into the bathroom and closed the door.  Defendant at that point would have seen that the girls moved the towels and discovered the camera.  Likewise, when he viewed the footage he would see the girls discovering the camera and realizing it was filming them.  On hearing the officers' knocking on the doors, defendant would have reason, as well as occasion, to destroy the evidence.

{¶ 25} Police, however, cannot rely on exigent circumstances of their own

-29-

making to justify a warrantless entry.  *Jenkins* at 271, 661 N.E.2d 806.  In *Jenkins* the police knocked on defendant's door because they suspected he was selling marijuana.  *Id*. at 267, 661 N.E.2d 806.  The defendant peered through the shade and told the officers they could not enter.  *Id.*  Believing the defendant had something to hide and was inside destroying drugs, the officer kicked in the door.  *Id*. at 267-68.  Jenkins found no exigent circumstances because "[i]t was not until after [the officer] knocked and was refused entry that [the officer] suspected that appellant was running to destroy evidence of drugs," so the "exigent circumstances, if any * * * were the direct result of [the officer's] actions."  *Id*. at 269, 661 N.E.2d 806.  *See also United States v. Chamber* (C.A.6, 2005), 395 F.3d 563, 568-69 (finding no exigent circumstances where police had extensive and reliable information the defendant was running a methamphetamine lab in his trailer, knocked on the door of the trailer and, after a woman appeared, retreated, and called out "police," the officers used their knock and her refusal to talk to justify their warrantless entry); *State v. Sheppard* (2001), 144 Ohio App.3d 135, 142, 759 N.E.2d 823; *State v. Sims* (1998), 127 Ohio App.3d 603, 612, 713 N.E.2d 513; *State v. Heaven* (1990), 65 Ohio App.3d 832, 833, 585 N.E.2d 521.

{¶ 26} Here, as in *Jenkins* and *Chamber*, two patrol officers knocked loudly on defendant's doors and announced "police" before the detectives from the sexual assault squad arrived and interviewed the neighborhood girls.  (Tr. 15-16, 140.)  The officers, however, did not create the exigent circumstances with their knocking.  Having been informed of what the girls related to their mother, the officers knew that, after the girls discovered the video camera, defendant went into the bathroom, shut the door, and inevitably would have realized the girls discovered the camera: someone was aware of his criminal behavior.  The information the girls supplied, coupled with the readily destructible nature of the evidence, justified the officers' entry.

{¶ 27} As a result, unlike *Chamber* or *Jenkins*, where police's knocking created the exigency by alerting the defendant to the officers' presence, here the girls' discovery of the camera, with defendant's knowledge they had done so, created the likelihood that defendant would try to destroy the recording.  As Kaeppner explained, "[i]f the camera was on * * * we're talking about electronic data which is easily erased. It's readily destructible." (Tr. 125.)  Cf. *State v. Bowe* (1988), 52 Ohio App.3d 112, 114, 557 N.E.2d 139 (concluding VCRs, cameras and radios were "not of a type easily destroyed, and the record [did] not reflect any indication that the police thought otherwise"); *United States v. Bates* (C.A.6, 1996), 84 F.3d 790, 796 (determining officers were unreasonable in thinking "fifteen kilograms of powder cocaine could be quickly disposed of by flushing it down the toilet or dumping it down the sink drain").

{¶ 28} Because exigent circumstances justified the officers' warrantless entry

-30-

into defendant's house, the trial court properly denied defendant's motion to suppress any evidence derived from the initial warrantless entry.  Defendant suffered no prejudice in appellate counsel's failure to raise the issue in defendant's first appeal.

## IV. Validity of Search Warrant

{¶ 29} Defendant alleges his appellate counsel was ineffective for failing to assign as error the trial court's denial of his motion to suppress the evidence obtained pursuant to the first search warrant, because (1) the warrant was impermissibly based on evidence seen during the first warrantless entry, (2) police had no probable cause to search for DVDs or cassette tapes, and (3) the warrant was unconstitutionally overbroad.

### A. Warrant not based on any evidence acquired during initial warrantless entry

{¶ 30} Nothing in the record indicates Detective Grube's affidavit to support the request for a search warrant used any information obtained or evidence seen as a result of a search during law enforcement's initial warrantless entry into defendant's home.  The officers all testified they performed no search of any kind when they went into the house.  Although they performed a sweep of the residence to assure no one else remained inside, they did not look around for anything besides another body and removed only defendant from the house.  Indeed, Grube's affidavit simply reiterates what the two older girls told Phillips and Grube about what happened at defendant's house earlier that day.  The affidavit does not reference the earlier entry, defendant's arrest or anything the officers may have seen during that entry.  Accordingly, defendant's argument that the warrant was impermissibly based on the officers' observations during their initial entry is unpersuasive.

### B. Probable cause to search for DVDs and cassette tapes established

{¶ 31} Defendant contends police had probable cause to search only for the video camera the girls reported seeing, not for DVDs or cassette tapes.  The warrant authorized police to search defendant's residence for "digital media storage devices, any type of equipment used to produce and view photographs or video images, including * * * video disks or video tapes." (State's Exhibit A.)

{¶ 32} The Fourth Amendment to the United States Constitution requires that warrants issue only "upon probable cause."  Probable cause "means less than evidence which would justify condemnation," so that only the "probability, and not a prima facie showing of criminal activity is the standard of probable cause." *State v. George* (1989), 45 Ohio St.3d 325, 329, 544 N.E.2d 640 (internal

-31-

quotation marks omitted).  To search for evidence of a crime there must "be a nexus * * * between the item to be seized and criminal behavior" as well as "cause to believe that the evidence sought will aid in a particular apprehension or conviction." *Warden, MD. Penitentiary v. Hayden* (1967), 387 U.S. 294, 307, 87 S.Ct. 1642, 1650, 18 L.Ed.2d 782.

{¶ 33} When determining "the sufficiency of probable cause in an affidavit submitted to support a search warrant, '[t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him including "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.' " *George* at paragraph one of the syllabus, *quoting Gates*, 462 U.S. 213 at 238-39, 103 S.Ct. 2317 at 2332, 76 L.Ed.2d 527.  A reviewing court should not conduct a *de novo* review of a magistrate's determination of probable cause. Rather, "the duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed," according "great deference to the magistrate's determination of probable cause" and resolving "doubtful or marginal cases in this area * * * in favor of upholding the warrant." *Id*. at paragraph two of the syllabus.

{¶ 34} The magistrate is charged with considering the veracity and basis of the individuals' knowledge who supply the officers with information.  Information "from a citizen eyewitness" is "presumed credible and reliable, and supplies a basis for a finding of probable cause in compliance with *Gates*."  *State v. Garner* (1995), 74 Ohio St.3d 49, 63, 656 N.E.2d 623.  Indeed, " 'a tip from an identified citizen informant who is a victim or witnesses a crime is presumed reliable, particularly if the citizen relates his or her basis of knowledge.'"  *State v. Jackson* (Mar. 5, 1999), 2d Dist. No. 17226, *quoting State v. Gress* (June 19, 1998), 2d Dist. No. 16899; *Maumee v. Weisner* (1999), 87 Ohio St.3d 295, 302, 720 N.E.2d 507, *citing Gates*, 462 U.S. at 233-34, 103 S.Ct. at 2329-30 (noting a "personal observation by an informant is due greater reliability than a secondhand description").  Here, because the girls were citizen eyewitnesses who personally observed defendant's act of secretly videotaping them as they undressed, the magistrate could presume the information the girls provided to the officers was credible, reliable, and entitled to great weight.

{¶ 35} Within that context, we note Detective Grube filled out the affidavit in support of the search warrant to search for evidence of the crimes of voyeurism under R.C. 2907.08(D)(1) and pandering sexually oriented matter involving a minor under R.C. 2907 .322(A)(1).  Grube's affidavit stated defendant not only attempted to secretly record the girls as they undressed but told them to rub lotion on the erogenous parts of their body.  With the girls' information, the magistrate had a substantial basis to conclude the crimes occurred in defendant's

-32-

house, and the house likely held evidence of the crimes in the form of DVDs, cassette tapes, or some other digital media format.  Accordingly, the items properly were listed as objects to be seized pursuant to the search warrant, and the magistrate had probable cause to issue the warrant.

{¶ 36} Defendant relies on *United States v. Hodson* (C.A.6, 2008), 543 F.3d 286 to argue Grube's affidavit failed to set forth probable cause.  *Id.* at 289 (concluding the warrant could not pass constitutional muster because the affidavit "established probable cause to search for evidence of one crime (child molestation) but designed and requested a search for evidence of an entirely different crime (child pornography").  Defendant thus contends "any link between evidence showing [his] interest in seeing children undressing and being involved in sex crimes would be an assumption-an unfounded assumption at best."  (Appellant's brief, 20.)  Unlike *Hodson*, the officers here were looking for evidence of the very crime for which they had information, not for evidence of a different crime.  *Hodson* is not persuasive on these facts, as the girls' information provided a basis for the municipal court judge to conclude probable cause existed.

## C. Search warrant not overbroad

{¶ 37} In a related argument, defendant contends the search warrant was impermissibly overbroad because it authorized officers to search for items other than the digital camera subject of the girls' report to their mother and law enforcement.  The Fourth Amendment to the United States Constitution provides that warrants only may issue if the warrant "particularly describ[es] the place to be searched and the * * * things to be seized."  The purpose of the "particularity requirement was to prevent general searches" and the "wide-ranging exploratory searches the Framers intended to prohibit."  *Maryland v. Garrison* (1987), 480 U.S. 79, 84, 107 S.Ct. 1013, 1016, 94 L.Ed.2d 72.

{¶ 38} Reviewing courts conduct a *de novo* review in considering whether a warrant is unconstitutionally overbroad.  *State v. Gritten*, 11th Dist. No.2004-P-0066, 2005-Ohio-2082, ¶ 11, *citing United States v. Ford* (C.A.6, 1999), 184 F.3d 566, 575.  The degree of specificity required in a search warrant necessarily will vary with the nature of the items to be seized.  *Id*. at ¶ 13, *quoting State v. Benner* (1988), 40 Ohio St.3d 301, 307, 533 N.E.2d 701.  A broad or generic description of items to be searched will be "valid if it 'is as specific as circumstances and nature of the activity under investigation permit' and enables the searchers to identify what they are authorized to seize."  *State v. Hale*, 2d Dist. No. 23582, 2010-Ohio-2389, ¶ 71, *quoting State v. Armstead*, 9th Dist. No. 06CA0050-M, 2007-Ohio1898, ¶ 10.

{¶ 39} In *Hale*, the Montgomery County police received information from the

-33-

Immigration, Customs and Enforcement Agency that Hale subscribed to a known child pornography site. *Id*. at ¶ 7.  Police obtained a warrant to search Hale's residence for "items of property like computers, central processing units, storage devices, and financial records connected with the crime of Pandering Obscenity Involving a Minor." *Id*. at ¶ 7, ¶ 56-60.  The Second District concluded the warrant was not unconstitutionally overbroad because officers were "to search only for items connected to the crime of Pandering Obscenity Involving a Minor." *Id*. at ¶ 76.  The court added not only that "the warrant could not reasonably have described the items more precisely" but that the "search was limited to items related to the specified offense." *Id*. at ¶ 77.  *See also United States v. Summage* (C.A.8, 2007), 481 F.3d 1075, 1079-80 (determining the warrant at issue was not overbroad in authorizing officers to search for video tapes, DVDs, pornographic pictures, all video and/or digital recording devices and equipment, all equipment used to develop and/or upload/download photographs and/or movies, and computers at defendant's residence where the warrant arose out of the defendant's offering a mentally handicapped male money to have sex with an unknown female while the defendant videotaped the incident and took photos of the victim); *State v. Mazzaferro* (July 23, 2007), Wash. Ct.App. Div. 1 No. 58836-2-I.

{¶ 40} Here, as in *Hale*, the search warrant named the items to be seized in reference to the crimes of voyeurism and pandering, thus limiting the search to items related to the offense.  Moreover, as in *Summage*, the search warrant specified a range of items because, although officers knew defendant made a video recording of the girls' undressing, they did not know in which format defendant kept the recorded material.  Accordingly, the warrant described the items with sufficient particularity considering the evidence police were searching for and the range of media available to defendant for storing the evidence. *Cf. Armstead* at ¶ 11 (concluding warrant was overbroad when, in addition to authorizing search for the crack-cocaine suspected to be on the premises, it also authorized a search for "any other controlled substances or dangerous drugs" and "any other contraband"); *Gritten* at ¶ 14 (determining warrant to be overbroad when it authorized officers to seize "any evidence of the crime drug abuse and all other fruits and instrumentalities of the crime at the present time unknown").

{¶ 41} Because defendant's argument is unpersuasive in asserting the trial court erred in not granting his motion to suppress the evidence taken from his house, appellate counsel's failure to assign the issue as error did not prejudice defendant.

*State v. Enyart*, 2010 WL 4681889 at ** 4-10.  Enyart subsequently appealed this decision to the

Supreme Court of Ohio, which dismissed his appeal as not involving any substantial

-34-

constitutional question.  (Doc. No. 7-1, Exh. 36.)  He also filed a petition for writ of *certiorari* in the United States Supreme Court, which was denied on October 3, 2011. (Doc. No. 7-1, Exh. 37.)

Based on the above, the Court finds Enyart was provided a full and fair opportunity to litigate his Fourth Amendment claims.  Moreover, Enyart points to nothing in the state court record suggesting his ability to present his claims was frustrated through a failure on Ohio's review process.  The trial court conducted an evidentiary hearing (at which the testimony of five witnesses was presented); heard oral argument; questioned defense counsel extensively; and, provided an explanation from the bench as to why Enyart's motions were denied.  (Doc. No. 7-2.)  While Enyart apparently believes the trial court should have provided a more comprehensive analysis of its factual and legal findings, the Sixth Circuit has made clear that a state court "need do no more than 'take cognizance of the constitutional claim and rule in light thereof.'"  *Riley*, 674 F.2d at 525 (quoting *Moore v. Cowan*, 560 F.2d 1298, 1302 (6th Cir. 1977)).  Here, the state courts clearly satisfied this standard.

Because Enyart was provided an opportunity to fully and fairly present his Fourth Amendment claims in the state courts and because there was no failure in the review process, Enyart's First, Second, and Third Grounds for Relief are not cognizable in habeas.

### C.  *Miranda* Claims

In his Fourth, Fifth, Sixth and Seventh Grounds for Relief, Enyart argues his due process rights were violated when the trial court denied his motions to suppress statements he made to law enforcement during his second interrogation.[6]  He maintains that, several days prior to this

---

[6]  Enyart was interrogated by law enforcement on two occasions.  The first occurred on August 11, 2007, after officers arrested him on suspicion of videotaping several young girls as they changed out of their bathing suits.  Enyart did not file a

interrogation, he appeared at a bond hearing in municipal court and executed a written "Declaration of Intent to Exercise Constitutional Rights," in which he indicated he had counsel and did not wish to be questioned by police without his attorney present.  In light of this Declaration, Enyart asserts police officers violated his constitutional rights when they thereafter interrogated him without counsel.  He maintains the fact that the officers *Mirandized* him at the beginning of the interrogation is immaterial given his previous assertion of the right to counsel.  Finally, Enyart argues that, even if he were considered to have waived his right to counsel, any such waiver was involuntary in light of the fact he had been assaulted the night before while incarcerated and was in "panic mode."

Respondent maintains Enyart's *Miranda* claims are procedurally defaulted because he failed to raise them on direct appeal.  He also emphasizes that, although Enyart attempted to raise his *Miranda* claims in his App. R. 26(B) Application, the state court expressly declined to allow reopening on this basis.  Moreover, Respondent argues "Enyart's attempt to assert the *Miranda* claims under the cloak of ineffective assistance of appellate counsel [in his App. R. 26(B) Application] did not preserve or resurrect the underlying *Miranda* claims [for federal habeas review] because the ineffective assistance of appellate counsel claim is analytically distinct from the underlying *Miranda* claim." (Doc. No. 7 at 42.)  Finally, Respondent argues that, even if this

---

motion to suppress relating to statements he made during this first interrogation, nor does he raise any constitutional claims in this habeas proceeding relating thereto.  Enyart was next interrogated several days later, after officers obtained and executed a search warrant for his residence and discovered numerous DVDs and VHS cassette tapes showing him performing sexual acts on children.  Based on these incriminating DVDs and tapes, police re-arrested Enyart and interrogated him for the second time.  *See generally State v. Enyart*, 2010 WL 4681889 at ** 1-3.  Enyart filed a motion to suppress the statements he made during this second interrogation, which the trial court denied.  It is this ruling that Enyart challenges in the instant habeas Petition.

Court were to consider Enyart's *Miranda* claims on the merits, the state courts' determination that his statements were not subject to suppression was not contrary to or an unreasonable application of clearly established federal law.

### 1. Procedural Default

As discussed *supra*, although Enyart pled no contest, the Court assumes for purposes of this Opinion that he did not waive federal habeas review of his constitutional claims arising from the trial court's denial of his motion to suppress statements made during the second interrogation. This assumption is based on the fact that (1) Enyart's counsel specifically stated during the Plea and Sentencing Hearing that he intended to appeal the trial court's rulings on this suppression motions, with no objection from the State; and, (2) Ohio Crim. R. Pr. 12(I) expressly provides that "[t]he plea of no contest does not preclude a defendant from asserting upon appeal that the trial court prejudicially erred in ruling on a pretrial motion, including a pretrial motion to suppress."

However, for reasons unknown, Enyart's appellate counsel[7] did not challenge on direct appeal the trial court's denial of his motions to suppress, including his motion to suppress statements made during the second interrogation. (Doc. No. 7-1, Exh. 18.) Rather, the only ground raised in Enyart's direct appeal challenged the voluntary character of his plea. (Doc. No. 7-1, Exh. 18.) As noted above, on December 9, 2008, the state appellate court rejected this argument and affirmed Enyart's conviction and sentence. (Doc. No. 7-1, Exh. 21.)

On March 5, 2009, Enyart filed a timely Application for Re-opening Pursuant to App. R.

---

[7] Enyart was represented by different attorneys at trial and on direct appeal. Specifically, he was represented by David Thomas during pretrial proceedings and sentencing, and by W. Joseph Edwards on direct appeal. (Doc. No. 7-1, Exhs 1, 2, 13, 14, 15, 17, 18.)

26(B). [7] The state appellate court granted re-opening with respect to appellate counsel's failure to assign as error the trial court's decision denying the motions to suppress evidence taken from his residence. However, it did not grant re-opening with respect to appellate counsel's failure to contest the denial of Enyart's motion to suppress his statements. The court explained as follows:

### V. Statements

{¶ 42} Defendant's third main argument on reopening asserts the trial court wrongly admitted into evidence defendant's statements to law enforcement, as the interrogations that produced the statements either were involuntary or violated defendant's Miranda rights. Defendant did not seek, and we did not grant, reopening concerning appellate counsel's failure to assign as error the trial court's decision denying defendant's motion to suppress his statements to law enforcement. Rather, we granted reopening regarding defendant's motion to suppress the evidence taken from his home. In any event, since we determined the initial entry into defendant's home to arrest him and the search warrant were valid, all of the incriminating DVDs and VHS tapes which depicted defendant raping and sexually assaulting children properly could have been admitted into evidence. As such, the record would have contained more than enough evidence to convict defendant of the crimes to which he pled no contest, even without defendant's statements to police.

*State v. Enyart*, 2010 WL 4681889 at * 10. Enyart appealed the decision to the Supreme Court of Ohio, which dismissed it as not involving any substantial constitutional question. (Doc. No. 7-1, Exh. 36.) He then filed a petition for writ of *certiorari* in the United States Supreme Court, which was denied on October 3, 2011. (Doc. No. 7-1, Exh. 37.)

Meanwhile, on September 9, 2008, with his direct appeal pending, Enyart filed a *pro se* Petition to Vacate or Set Aside Judgment of Conviction or Sentence, in which he argued (among

---

[7] Ohio App. R. 26(B) provides that: "[a] defendant in a criminal case may apply for reopening of the appeal from the judgment of conviction and sentence, based on a claim of ineffective assistance of appellate counsel. An application for reopening shall be filed in the court of appeals where the appeal was decided within ninety days from journalization of the appellate judgment unless the applicant shows good cause for filing at a later time."

other things) that the trial court erred in denying his motion to suppress statements made during

the second interrogation.  (Doc. No. 7-1, Exh. 23.)  The trial court denied Enyart's Petition on the

basis of *res judicata,* holding as follows:

> This matter comes before the Court upon Defendant's Petition to Vacate or Set
> Aside Judgment of Conviction or Sentence filed September 9, 2008; and State's
> Answer and Motion to Dismiss Petition for Post-Conviction Relief filed on
> September 19, 2008.
>
> These issues have not previously been addressed by this Court because
> Petitioner's Motion or Petition was filed when this case was on appeal with the
> 10th District Court of Appeals and the filings were sent with the Court file to the
> Court of Appeals.  Additionally, neither Petitioner nor the prosecutor included a
> Certificate of Service to the Court.
>
> Defendant's appeals were pending in the Court of Appeals at the time this
> Petition was filed. Since that time, Defendant's appeals have been overruled and
> all judgments of the trial court were affirmed in 2008- Ohio- 6418 and 2010-
> Ohio - 5623.
>
> Defendant's post-conviction Petition raises five (5) claims in both cases:
>
> 1.  Unlawful entry of his home to arrest him, and unlawful search of his
>     mailbox;
>
> 2.  An improper second interrogation;
>
> 3.  Failure to order a presentence investigation;
>
> 4.  365 year sentence is cruel and unusual punishment and double jeopardy
>     because some charges overlap; and,
>
> 5.  Ineffective assistance of trial counsel.
>
> *Res judicata* is applicable to all post-conviction proceedings and bars any claim
> that was or could have been raised at trial or on direct appeal.  *State v. Steffen*,
> (1994), 70 Ohio St.3d 399; *State v. Perry*, (1967), 10 Ohio St.2d 175.
>
> Defendant's first four (4) claims are all barred by *res judicata*.  They have been
> raised in the trial court and the Court of Appeals.
>
> Also, trial counsel ineffectiveness is barred by *res judicata*.  The Petition offers

> nothing new in the trial court record showing that counsel acted ineffectively.
> Defendant's arguments are simply conclusory allegations suggesting that counsel
> must have been ineffective because Defendant was convicted. Without specific
> acts or omissions of counsel, the Petition fails.
>
> Defendant's Petition of Post-Conviction Relief is DENIED.

(Doc. No. 7-1, Exh. 24.) The parties do not direct this Court's attention to anything in the state court record suggesting Enyart appealed the trial court's ruling.

The Court finds Enyart's *Miranda* habeas claims (i.e. Grounds Four through Seven) are procedurally defaulted. Enyart did not raise these claims on direct appeal. As set forth above, Enyart raised only one claim on direct appeal, alleging his no contest plea was involuntary. This claim made no mention of any of the various arguments raised in Grounds Four through Seven of the instant habeas Petition. While Enyart did argue in his September 9, 2008 post-conviction petition that the trial court erred in denying his motion to suppress his statements during the second interrogation, the trial court denied the petition on the basis of *res judicata*, and Enyart did not appeal this ruling. The Sixth Circuit has consistently held that Ohio's doctrine of *res judicata*, i.e. the "*Perry* rule," is an adequate and independent state ground for barring habeas review of constitutional claims. *See e.g. Mason v. Mitchell*, 320 F.3d 604, 628 (6th Cir. 2003); *Coleman v. Mitchell*, 268 F.3d 417, 429 (6th Cir. 2001).

Moreover, the fact that Enyart may have attempted[8] to raise these grounds in his App. R.

---

[8] There is some dispute regarding whether Enyart, in fact, sought reopening based on appellate counsel's failure to challenge the trial court's denial of his motion to suppress statements during the second interrogation. Enyart insists that he clearly sought reopening on this basis in the Rule 26(B) Application. The state appellate court, however, indicates that Enyart did not seek reopening on this issue. *State v. Enyart*, 2010 WL 4681889 at * 10. The Court need not resolve this question, however, as it is not material to the determination of whether Enyart's underlying *Miranda* claims are procedurally defaulted.

-40-

26(B) Application does not preserve them for federal habeas review.  Indeed, it is well-established that "bringing an ineffective assistance claim in state court based on counsel's failure to raise an underlying claim does not preserve the underlying claim for federal habeas review because the two claims are analytically distinct."  *Davie v. Mitchell*, 547 F.3d 297, 312 (6th Cir. 2008).  As another district court within this Circuit has explained:

> [U]nder Ohio law, an application for reopening pursuant to App. R. 26(B), or a "*Murnahan*" motion, is a procedural mechanism for raising claims of appellate counsel ineffectiveness, not for bootstrapping underlying constitutional claims that were omitted from the direct appeal in the first place.  Fair presentment requires a petitioner to present his claims to the state courts in a procedure and manner that will provide the state courts with the opportunity to apply controlling legal principles.  *Picard v. Connor*, 404 U.S. 270, 276-77, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971).  To the extent petitioner is suggesting that raising a claim in a Rule 26(B) application is equivalent to raising that claim on direct appeal, he is in error.  The notion that any constitutional claim raised in an application for reopening is fairly presented to the state courts in the same manner as if that claim had been raised in a timely direct appeal is untenable and unsupported by case law.  The only claims that can be preserved in a Rule 26(B) application for reopening, therefore, are claims of ineffective assistance of appellate counsel.

*Stojetz v. Ishee*, 389 F.Supp.2d 858, 898-99 (S.D. Ohio 2005).  *See also Wogenstahl v. Mitchell*, 668 F.3d 307, 343 (6th Cir. 2012); *White v. Mitchell*, 431 F.3d 517, 526 (6th Cir. 2005); *White v. Shewalter*, 2012 WL 2711463 at * 10 (N.D. Ohio March 14, 2012).  Thus, Enyart's App. R. 26(B) Application did not preserve his underlying *Miranda* claims for habeas review.[9]

In light of the above, the Court finds Enyart's *Miranda* claims are procedurally defaulted. Enyart may nevertheless obtain a merits review of these claims if he can demonstrate cause for the default and prejudice resulting therefrom, or that failure to review the claim would result in a

---

[9] Enyart has not clearly raised an ineffective assistance of appellate counsel claim in his habeas Petition based on counsel's failure to challenge the trial court's denial of his motion to suppress statements made during the second interrogation.

fundamental miscarriage of justice.  *See Lundgren*, 440 F.3d at 763.  Enyart makes no argument, either in his Petition or Traverse, regarding any of these issues.  Although represented by counsel, he does not address the issue of procedural default in his habeas filings, making no clear argument that there exists either cause or prejudice.  Nor does he make any argument that he is "actually innocent."

Moreover, even assuming Enyart could demonstrate cause[10] to excuse the default, he has not set forth any evidence of actual prejudice.  *See Ambrose v. Booker*, 684 F.3d 638, 649 (6th Cir. 2012) (finding that "having shown cause, petitioners must show actual prejudice to excuse their default").  As noted *supra*, prejudice does not occur unless the petitioner demonstrates a "reasonable probability" the outcome of the state court proceedings would have been different absent the alleged constitutional errors.  *See Franklin*, 434 F.3d at 417; *Mason*, 320 F.3d at 629. In the instant case, Enyart does not argue that he would not have pled no contest if the trial court granted his motion to suppress his statements but nevertheless denied his motions to suppress the

---

[10]  Although not argued by Enyart, the Court recognizes that ineffective assistance of counsel may serve as "cause" for a procedural default if it rises to the level of a constitutional violation.  *Martin v. Mitchell*, 280 F.3d 594, 605 (6th Cir.2002).  However, in order to excuse a default, the ineffective assistance of counsel claim must not *itself* be procedurally defaulted.  *See Edwards v. Carpenter*, 529 U.S. 446, 450-51 (2000); *Wogenstahl v. Mitchell*, 668 F.3d 307, 321 (6th Cir. 2012).  Here, Enyart argues he raised an ineffective assistance of appellate counsel claim in his App. R. 26(B) Application based on counsel's failure to assign as error the trial court's denial of his motion to suppress statements.  However, the state appellate court did not grant reopening with respect to this claim.  While the court does not clearly explain the basis for this decision, it appears reopening was denied on the grounds that Enyart had failed to establish a "genuine issue" as to whether he was deprived of the effective assistance of appellate counsel with respect to this particular issue.  (Doc. No. 7-1, Exh. 28, p.3).  It is not entirely clear whether, in denying reopening with respect to this claim, the state appellate court enforced a procedural bar or, conversely, considered and rejected the claim on the merits.  *See generally James v. Brigano*, 470 F.3d 636, 640-42 (6th Cir. 2006).  However, as this issue is not argued by the parties, the Court will not address it herein.

DVDs and VHS tapes.  Accordingly, the Court finds Enyart has failed to demonstrate actual prejudice to excuse the default of his *Miranda* claims.

In light of the above, the Court finds Grounds Four through Seven of the Petition are procedurally defaulted.  Moreover, Enyart has failed to established cause and prejudice to excuse the default and has not come forward with any evidence of "actual innocence. "  Accordingly, the Court will not reach the merits of these Grounds for Relief.

### D. Cumulative Error/Ineffective Assistance of Counsel

In his Eighth (and final) Ground for Relief, Enyart argues that "[t]he cumulative effect of the fact that, with reference to each of the contentions made above, counsel's responses to the various contentions referred to therein seem clearly to show he failed to provide Richard Enyart with the type of effective assistance of counsel that can survive constitutional scrutiny within the ambit of *Strickland v. Washington*, 466 U.S. 668 (1984).  Indeed, so much so, that counsel literally was not functioning as the counsel guaranteed by the Sixth amendment of the United States Constitution.  In the wake thereof, Richard Enyart was prejudiced– in fact, severely so." (Doc. No. 1 at 12.)

The basis for this Ground for Relief is not entirely clear.  While the Petition contains separate argument sections for each of his other Grounds for Relief, it does not do so with respect to this particular claim.  Reading the Petition and Traverse as a whole, however, it appears Enyart is arguing trial counsel was ineffective for (1) allowing him to talk to law enforcement during the second interrogation; and, (2) failing to call him to testify at the suppression hearing.

-43-

With respect to Enyart's claim that trial counsel was ineffective for "allowing him"[11] to answer questions during the second interrogation without the assistance of counsel, the Court finds this claim has not been fairly presented to the state courts.  Enyart does not direct this Court's attention to anything in the record suggesting this issue has ever been raised in state court. It is clear he did not raise this claim on direct appeal.  The Court notes Enyart did raise a general claim of ineffective assistance of trial counsel in his *pro se* post-conviction petition, filed September 9, 2008.  (Doc. No. 7-1, Exh. 22.)  However, he did not specifically claim trial counsel was ineffective on this basis, stating only "Petitioner believes that he was represented by ineffective counsel, but lacks the skill or knowledge to adequately outline the specific areas in which he has been misrepresented.  Petitioner cites that given the totality of the circumstances outlined [in the petition], certainly counsel has proven to be ineffective."[12] (Doc. No. 7-1, Exh. 22.)  Thus, this claim has not been fairly presented to the state courts.

Moreover, Enyart does not argue there is a potential state remedy available to him at this late date.  Thus, the Court finds Enyart's claim that trial counsel was ineffective for allowing him

---

[11]  The Petition states that "[w]e say 'allowed' because counsel was aware his client was *en route* to the [police] station, having been arrested.  And, only a petty-fogger could not have known they would try to elicit incriminating statements from him. After all, this is Ohio, it is not Utopia." (Doc. No. 1 at 5, fn. 1).

[12]  While Enyart did assert in his Rule 26(B) Application that appellate counsel was ineffective for failing to raise several instances of ineffectiveness of trial counsel, he did not seek reopening of his direct appeal on the basis of appellate counsel's failure to challenge this particular instance of alleged ineffectiveness of trial counsel.  Moreover, even if Enyart had raised this particular instance of ineffectiveness of trial counsel in his 26(B) Application, it would not have preserved it for habeas review.  *See Davie*, 547 F.3d at 312 (finding that "bringing an ineffective assistance claim in state court based on counsel's failure to raise an underlying claim does not preserve the underlying claim for federal habeas review because the two claims are analytically distinct").

-44-

to answer questions during the second interrogation without the assistance of counsel is procedurally defaulted. *See Buell v. Mitchell*, 274 F.3d 337, 349 (6th Cir. 2001) (finding that, in circumstances where the petitioner has failed to present a claim in state court, a habeas court may deem that claim procedurally defaulted because the Ohio state courts would no longer entertain the claim). Enyart does not assert either cause or prejudice to excuse the default, nor does he maintain that he is actually innocent. Accordingly, the Court will not address the merits of this claim.

Finally, Enyart alleges his trial counsel was ineffective for failing to call him as a witness to testify at the suppression hearing. He maintains he would have testified regarding the alleged four hour time delay between the police's arrival at his residence on August 11, 2007, and the initial warrantless entry into his home. He also alleges he would have testified that "[i]t was impossible for him to permanently erase anything from the [videocamera's] memory." (Doc. No. 1 at 31.) Enyart maintains his testimony was crucial to establishing that "exigent circumstances" did not exist to justify the officers' warrantless entry. He also asserts he would have testified regarding his fear and confusion during the second interrogation (particularly in light of the fact he had just been assaulted while incarcerated), thus demonstrating that his statements to law enforcement were the product of "duress and coercion." Finally, Enyart maintains that, had he "testified in support of his Motion to Suppress (as he should have), his testimony would have been inadmissible at trial. So, postured, there is only one explanation for this failure. His counsel simply did not understand this. No strategic reason for Petitioner not testifying is even imaginable." (Doc. No. 1 at 31, fn. 7).

The Court finds this claim is procedurally defaulted. Enyart did not raise this claim on

direct appeal, nor did he clearly raise it in his September 9, 2008 *pro se* post-conviction petition. While he did raise this issue in his 26(B) Application,[13] "[t]he only claims that can be preserved in a Rule 26(B) application for reopening . . . are claims of ineffective assistance of appellate counsel." *Stojetz*, 389 F.Supp.2d at 898-99. *See also Wogenstahl*, 668 F.3d at 343; *White*, 431 F.3d at 526; *White*, 2012 WL 2711463 at * 10. Thus, Enyart's App. R. 26(B) Application did not preserve his underlying ineffective assistance of trial counsel claim for habeas review. Moreover, Enyart does not assert either cause or prejudice to excuse the default, nor does he maintain that he is actually innocent. The Court will not, therefore, address the merits of this claim.

In light of the above, the Court finds Enyart is not entitled to habeas relief with respect to Ground Eight.

**E.    Evidentiary Hearing**

Enyart requests this Court conduct an evidentiary hearing to allow him to present his "version of the events" regarding the subjects of his pretrial motions to suppress, as well as his trial counsel's ineffectiveness.

The circumstances under which Enyart may be entitled to an evidentiary hearing are set forth in 42 U.S.C. § 2254(e)(2). That statute provides as follows:

> If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that--

---

[13] The state appellate court did not grant reopening on this claim, finding that "Defendant . . fails to delineate how the outcome of the suppression hearing would have been altered had he testified. Nor can defendant explain how offering his testimony at the suppression hearing would have been a prudent strategy for a subsequent trial, since no trial occurred. We thus cannot conclude defendant's appellate counsel should have raised this issue." (Doc. No. 7-1, Exh. 28 at p. 4.)

(A) the claim relies on-

(i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

(ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and

(B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

42 U.S.C. § 2254(e)(2)(A)-(B).

Enyart's request for an evidentiary hearing is denied.  He has not argued that he is entitled to an evidentiary hearing because his claims rely on a new rule of constitutional law pursuant to § 2254(e)(2)(A)(i).  Nor has he demonstrated a hearing is warranted because his habeas claims rely on "a factual predicate that could not have been previously discovered through the exercise of due diligence."  42 U.S.C. § 2254(e)(2)(A)(ii).  Although Enyart would like the Court to conduct an evidentiary hearing so that he may present his "version of the facts," he has not established that any of the information he would present could not have been previously discovered.  Indeed, at least with respect to his Fourth Amendment and *Miranda* habeas claims, the information Enyart wishes to present to this Court has been available to him since the events in question occurred. Accordingly, Enyart is not entitled to an evidentiary hearing with respect to any of his habeas claims.

-47-

## V.  Conclusion

For the foregoing reasons, it is recommended that Enyart's Petition be DENIED.


/s/ Greg White_____
U.S. MAGISTRATE JUDGE

Date: December 17, 2013

## OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).**